### Jackson, ex dem. Smith and others, vs. Adams.

If an alien holding land under the provisions of the acts of the legislature of 1802 and 1808, authorizing aliens to purchase and hold real estate, dies intestate, his lands descend to his heirs, although they be aliens: if he dies without heirs, the lands *escheat;* but until office found, the state has no right to enter and take possession, and a grant of the lands before office found, whether the legislature act or otherwise, conveys no title.

This was an action of ejectment, tried at the Erie circuit in December, 1829, before the Hon. Addison Gardiner, one of the circuit judges.

The lessors of the plaintiff claimed the premises in question, under title derived from Susannah Thomas, in whom, by an act of the legislature, passed March 10, 1815, was vested all the right, title and interest of the people of the state to the premises in question, upon a representation that one Samuel Helme had died intestate, without any legal representatives in this country, and that previous to his death, he had declared it to be his wish that Susannah Thomas should inherit his property. Helme was an alien, a German by birth; he came into this state in 1806, and resided at Buffalo until 1813, when he was killed by the enemy at the burning of Buffalo. In 1809 he obtained a deed of the premises in question from the Holland land company, and occupied the same from 1811 until the time of his death. The defendant pretended to no title. The judge charged the jury, that the only fact for them to ascertain was whether Helme became an inhabitant of this state previous to the passing of the act of April 8, 1808, *enabling aliens to purchase and hold real estate,* and if

UTICA,
July, 1831.

Jackson
v.
Adams.

they should find that he had so become an inhabitant, the defendant was entitled to a verdict, as in that case Helme, on his purchase, took an inheritable estate in the premises, which *The People* could not convey until after *office found*, under the act concerning escheats. The plaintiff excepted, and the jury found a verdict for the defendant, which was now moved to be set aside.

*J. A. Spencer*, for plaintiff.

*H. White· & A. H. Tracy*, for defendant.

*By the Court*, SUTHERLAND, J. It is not pretended that the act of the legislature had any other effect than to vest in Susannah Thomas whatever title or interest the state had in the premises in question. It neither divested nor affected in any manner the rights of any person.

An alien may purchase land, or take it by devise, but he holds it at the will of the government. The government may at any time institute an inquest of office, for the purpose of ascertaining whether he is an alien or not ; and if it be found that he is, the estate or possession of the land is immediately vested in the people of the state, who before had only the right or title. Jacob's Law Dict. tit. Office Found, and Inquest of Office. The people cannot enter upon the possession of an alien without this judicial proceeding. His entry and possession and holding are lawful, and can be terminated only by regular legal proceedings. *Jackson* v. *Beach*, 1 Johns. Cas. 401. 3 id. 211, 212, 325. 4 Johns. R. 75. 2 Johns. Cas. 29. But when an alien who holds land dies, at common law it instantly, and of necessity, without any inquest of office, escheats and vests in the state, because the freehold cannot be kept in abeyance, and he is incompetent to transmit by hereditary descent. The law, *quæ nihil frustra*, never casts the freehold upon an alien heir, who cannot keep it. Coke Litt. 26, and notes 3, 4, 5. Calvin's Case, 7 Co. 25, a. 1 Ventr. 417. 2 Kent's Comm. 46, 7. 3 Johns. Cas. 109. 1 Lev. 59. 6 Johns. Ch. R. 365. *Moores* v. *White*, 8 Mass. R. 445. 12 id. 143. 7 Cranch, 603. 4 Wheat. 453. 11 id. 232.

The next inquiry then is, whether Helme was embraced within the acts of 1802 and 1808, *enabling aliens to purchase and hold real estate* within this state, under certain restrictions; and if he was, what was the effect or operation of those acts upon his estate? The act of March 26, 1802, 3 R. S. 343, § 1, is in substance as follows: "Be it enacted that all purchases of lands made, or to be made, by any alien or aliens, who *have come to this state and become inhabitants thereof*, shall be deemed valid to vest the estate to them granted; and it shall and may be lawful to and for such alien or aliens to have and to hold the same, to his, her or their heirs or assigns forever, and to dispose of the same, any plea of alienism to the contrary thereof notwithstanding; provided that any purchase hereafter to be made by any such alien does not exceed 1000 acres." This act, it will be perceived, had no *prospective* effect; it applied only to such aliens as had, before its passage, become inhabitants of this state. The act of April 8, 1808, 3 R. S. 344, extended the provisions of the act of 1802 to all aliens who should, at the close of that session of the legislature, have become inhabitants of the state. The evidence shows that Helme came to Buffalo in 1806, and that he had resided on the Mohawk river for three years before that period. He became an inhabitant of this state then in 1803, and was entitled to the benefit of all the provisions of the acts of 1802 and 1808. Those acts expressly confer upon the aliens embraced in them the power of transmitting by hereditary descent to their heirs whatever real estate they may acquire and die seised of in this state; it gives to their blood an inheritable quality, through which a title can be deduced; and it seems to be understood as the established construction of these acts, that the *alien heirs* of such purchasers are as capable of taking as though they were natural born citizens.

Chancellor Kent, in the celebrated case of *Goodell* v. *Jackson*, 20 Johns. R. 707, in speaking of these acts says: "It is understood to be a general rule, that when an alien is allowed specially by statute to take and hold lands to him and his heirs, he has, of course, a capacity to transmit by inheritance to his alien offspring, or other alien heirs, and they have equally a

VOL. VII. 47

capacity to take." When the legislature speak without restriction or qualification of the heirs of an alien, they must mean such heirs as he was then competent to have; and it would be a reproach to the good sense, as well as to the good faith of the legislature, to suppose they could have any other meaning. It was formerly very common to provide in these special statutes, allowing aliens by name to hold lands in fee, that they should not sell or assign, except to a citizen; but there never was an instance of a proviso that their heirs should not take the inheritance after them, except they were citizens. The case of *Goodell* v. *Jackson* was the case of a patent for a military lot, given by the state to an Oneida Indian and his heirs, as a bounty for his services during the revolutionary war; and the question which the chancellor was discussing was whether, admitting the children of the patentee to be aliens, they could inherit, by virtue of the patent, from their father, and the conclusion of the chancellor was, that the permission by law to an *alien* to take and hold lands to him and his *heirs*, or a grant from government by authority of law, (as a patent,) to an alien and *his heirs*, does necessarily imply, that he may transmit by descent *to his children or other alien heirs;* and that the heirs in such cases may take the land of their ancestor in the same manner as if they were natural born citizens. This doctrine, so far as it relates to the effect of a patent granted by the state to an alien and his heirs, has been followed and applied by this court, in the case of *Jackson* v. *Etz*, 5 Cowen, 321, and *Jackson* v. *Hervey*, there referred to; and if it be sound in the case of a patent, it is not perceived why it is not equally applicable to the case of a legislative grant, or authority to an alien to purchase and hold lands to him and his heirs.

Helme, then, had an estate of inheritance in the premises in question, which he was capable of transmitting to his heirs. It did not vest, (as in the case of a mere alien,) upon his death, by force and operation of law in the state, but it descended to his heirs, if he had any; and the state had no right to enter upon, or dispose of the premises, until they had pursued the measures pointed out in the act concerning escheats, 1 R. L. 379, for ascertaining whether he had any heirs; if it was found

that he had no heirs, those measures would necessarily result in giving the state a perfect title by escheat. Helme stood in the same condition, in this respect, as any other citizen of the state ; if any natural born citizen dies without heirs, his lands escheat, but the state has no right to enter and take possession until office found, and any grant that they may make of such lands, whether by patent or otherwise, can convey no title, because, until office found, the state had no title, as every man is presumed to have heirs, until the contrary is shewn.

The charge of the judge, therefore, was correct, and the motion for a new trial must be denied.