## BENJAMIN F. SLATER *et al. versus* JOEL NASON.

In an action by a minor, an averment in the declaration, that he sues by his *guardian* may be amended by the substitution of an averment, that he sues by his *prochein ami.*

So, where, in a writ of entry, the declaration averred that S, the ancestor of the demandants, was seised within twenty years, and that the tenant disseised the demandants, it was *held*, that it might be amended, by substituting an averment, that the demandants were seised, and that the tenant, within thirty years, disseised them.

But where, in such action, the demandants, in the original count, claimed two undivided sixth parts of a messuage, it was *held*, that a new count, in which they demanded the whole of the same messuage, could not be substituted by way of amendment.

Where an alien dies intestate, and seised of real estate, it vests immediately, in the Commonwealth, without office found; and no one can derive title thereto from him.

WRIT of entry. The declaration originally consisted of one count which averred, that the demandants who were minors, sued by Abel Moore, as their *guardian ;* that they demanded two undivided sixth parts of a messuage in Boston ; that Benjamin Slater, whose heirs they were, was seised thereof within twenty years ; and that the tenant had disseised the demandants.

At the November term of this Court in 1830, the demandants filed another count as a substitute for the original count. The substituted count was allowed by *Shaw* C. J., who was then presiding, although it was objected to by the tenant.

In the substituted count, the demandants aver that they sue by Moore, as their *prochein ami*, and demand the whole of the same messuage, alleging that they were seised thereof, and that the tenant within thirty years disseised them.

The tenant pleaded that he did not disseise the demandants : and issue was joined thereon.

At the trial it appeared, that on September 20, 1780, one Stoddard conveyed the demanded premises to John Henley ; that John Henley, before purchasing the same, on November 20, 1779, made his will, by which he devised all his estate, real and personal, to his wife Mary Henley ; that the will was proved in 1780 ; that Mary Henley, on July 17, 1782, conveyed the easterly half of the demanded premises, described

Slater
v.
Nason.

by metes and bounds, to Benjamin Slater, the husband of her daughter Mary S. Slater, and the grandfather of the demandants; that on June 7, 1797, after the death of Mary Henley, Josiah Chamberlain, the brother of Mary S. Slater, they being the only children of Mary Henley, released all his interest in the demanded premises to Mary S. Slater; that on October 4, 1827, Mary S. Slater conveyed the whole of the demanded premises to the tenant, who entered thereon, and has ever since occupied them.

It further appeared, that Benjamin Slater, the grandfather of the demandants, was an alien and never naturalized; that he followed the seas; and that a letter was received from him in 1800; but it did not appear that he was ever heard from afterwards.

It also appeared, that Benjamin Slater, the grandfather, had three children, to wit: " Benjamin, the father of the demandants, Sarah, the wife of William Livingston, and Mary, the wife of John Osgood; and that Osgood and his wife, on January 9, 1815, conveyed all their interest in the premises to the father of the demandants, who died in 1824. Evidence was offered on the part of the demandants to prove a possession of the demanded premises by their grandfather and father, and on the part of the tenant, to show an adverse possession by himself and Mary S. Slater, under whom he claimed.

The demandants introduced evidence tending to show an entry on their behalf, by their guardian, Moore, before this action was commenced.

The jury were instructed, that the demandants might make title through the possession of their grandfather, although he was an alien and never naturalized. The tenant excepted to this instruction.

The jury returned a verdict in favor of the demandants, for two undivided third parts of the half of the demanded premises, which was conveyed by Mary Henley to Benjamin Slater, the grandfather of the demandants.

The cause was argued in writing.

*Fletcher* and *Dame*, for the tenant. The amendments were not rightfully allowed. As the action was commenced, the demandants sued by their guardian, and in the substituted

count, they sue by their *prochein ami*. In effect, a new party is introduced by such an amendment. *Reddington* v. *Farrar*, 5 Greenl. 379. In the original declaration, the demandants count on the seisin of their ancestor within twenty years ; in the substituted count, they declare on their own seisin and disseisin within thirty years ; so that, in fact, the amended count is the substitution of a new cause of action. The two counts could not have been joined in the first instance, and one cannot be substituted for the other as an amendment. Jackson on Real Actions, 103, 104.

The instruction to the jury, that the demandants might derive a title through their grandfather, who was an alien and never naturalized, was incorrect. 2 Kent's Comm. 46, 47 ; 2 Bl. Comm. 249 ; Co. Litt. 2 *b* ; Bac. Abr. *Alien, C.*

*Peabody*, for the demandants, to the point, that the amendments were properly allowed, cited *Haynes* v. *Morgan*, 3 Mass. R. 208 ; *Phillips* v. *Bridge*, 11 Mass. R. 242 ; *Rehoboth* v. *Hunt*, 1 Pick. 224 ; *Holmes* v. *Holmes*, 2 Pick. 23 ; to the point, that the demandants might claim title through an alien, he cited *Fairfax* v. *Hunter*, 7 Cranch, 620 ; *Sheafe* v *O'Neil*, 1 Mass. R. 256 ; *Craig* v. *Leslie*, 3 Wheaton, 589 ; *Jackson* v. *Lunn*, 3 Johns. Cas. 109 ; *Commonwealth* v. *André*, 3 Pick. 224 ; *Fox* v. *Southack*, 12 Mass. R. 143.

SHAW C. J. delivered the opinion of the Court. The *June 19th* first objection taken to the plaintiff's right to recover, is founded upon the amendments, made by the demandants in their writ and declaration, after the cause came into this Court.

In general, amendments allowed at Nisi Prius, are considered as allowed at the discretion of the judge ; but whenever such amendments are of a character to affect the right of the plaintiff to recover, the propriety of such amendments is a fit subject to be reserved by the judge for the consideration of the whole Court, and the decision of such questions by the whole Court tends generally to preserve a uniformity of practice, which it is of importance to maintain. In regard to the amendments, which were made in the present case, we are strongly inclined to the opinion, that allowing the person, who acts in behalf of the minor demandants, to style himself *prochein ami* instead of guardian, cannot be deemed

the introduction of a new party.  It has been held, that infants suing by *prochein ami*, are liable to a judgment for costs, thereby considering them as the legal party plaintiff to the suit, and the *prochein ami* as only an attorney of record. *Smith* v. *Floyd*, 1 Pick. 275.  It has also been held, that on a plea of abatement to the disability of the person of the plaintiff as an infant, an amendment may be allowed, permitting the introduction of a *prochein ami* by whom the infant plaintiff sues.  *Blood* v. *Harrington*, 8 Pick. 552.

Nor do we think that the change in the count, alleging their own seisin, was beyond the scope of those cases in which amendments are allowable.  It is the same cause of action.  It is the same title, defectively set out.  The original count was manifestly defective, and inconsistent with itself, in setting out the seisin of the father and averring the disseisin of themselves.  The original count however did allege the disseisin of the plaintiff by the defendant, and the amendment, in this respect, merely permits the demandants to aver their own seisin, in terms, which might be implied by the averment, as it stood in the original count, that the defendant had disseised them.

But we think another objection quite fatal.

In comparing the two counts, the premises described are precisely the same.  In the original count the demandants claim two undivided sixth parts of the described premises, and in the amendment they demand *the whole* of the same premises. We are all of opinion, that this introduces a new substantive cause of action, and so is repugnant to the established rule, that new causes of action cannot be introduced by way of amendment.  Under the original count, the plaintiffs could in no event recover more than one undivided third part of any portion of the described premises ; whereas, in fact, under the new count, by the verdict of the jury, they have recovered two undivided third parts of a distinct portion of the described premises, as distinguished and held by metes and bounds. Perhaps it is a conclusive objection against the amendment, that it did enlarge the subject matter of the suit and allow the demandants a chance to recover a larger share of the property than was originally claimed ; but the fact, that a larger share

has been recovered, than could have been recovered under the original count, is a good practical illustration of the operation of this rule.

Without considering the points in order, we think there is one other exception which goes to the whole merits of the demandants' title, and, in whatever form it may be presented, is decisive against it.

They claim title by descent from their grandfather, on the ground, that he died seised of the estate, and intestate ; and it is admitted that he was an alien.

We take the rule of law to be well settled, that where an alien, who may have taken an estate by purchase, and who may thereby be seised *de facto* and hold until the commonwealth take measures to enforce the escheat, dies leaving children, who, if he were a citizen, would be capable of taking, still the estate vests presently in the commonwealth.

An alien takes to the use of the commonwealth. He must be held to *take* a freehold by purchase ; otherwise the title of the grantor would not be devested ; but he cannot hold. And though he may convey by grant, yet he can convey no greater estate than he has. His grant therefore could only convey an estate, defeasible at the suit of the commonwealth.

But it is held that the law does nothing in vain. It will not therefore cast upon any one a freehold, which he cannot hold. And inasmuch as the law will not allow the fee to be in abeyance, and as no one can take by the act of law, as descent is, for the reason already given, the law holds as a necessary consequence, that on the death of the alien, the freehold vests in the commonwealth immediately, without office found. *Fox* v. *Southack*, 12 Mass. R. 143 ; *Fairfax* v. *Hunter*, 7 Cranch, 603 ; *Jackson* v. *Adams*, 7 Wendell, 367.

But another reason equally strong, and of similar character, is, that an alien is deemed in law, to have no inheritable blood, and no one therefore can derive title through him or from him.

In the great case of *Collingwood* v. *Pace*, 1 Lev. 59, and 1 Ventr. 413, where there were two sons born in England of an alien father, it was doubted and much discussed, whether

the one could be heir to the other, because he must deduce his title by descent through his father, who had no inheritable blood ; but it was ultimately decided by a majority of the court, after an elaborate argument, that one should inherit to the other, though neither of them could inherit to the father, for the descent between them was *immediate* and the one should make his title in a *mort d'ancestor*, and as heir to the brother, without mentioning the father. This, as a general rule, is laid down as among the first principles of the law of real property. It is thus expressed by Lord *Coke ;* " And so it is, if an alien doth purchase land and die, the law doth cast the freehold and inheritance upon the king." Co. Litt. 2 *b*. We therefore consider this defect of title decisive.

We have not supposed it necessary to consider, if Benjamin Slater, the elder, had been a British subject, what would have been the effect of that fact and the operation of the treaty of peace of 1783, and the treaty of 1794, upon the question we have been discussing, because there is nothing in the report to show whether he was, or was not, a British subject. If he was, those treaties may have an important bearing upon the subject.

*New trial granted*