SAMUEL WILBUR *versus* JONATHAN TOBEY.

The Commonwealth does not become seised of the real estate of a citizen dying intestate and without heirs, until the rendition of judgment in its favor upon an inquest of office ; for until then the presumption of law is that he had heirs. It cannot therefore convey such estate, before such a judgment has been rendered.

But it is otherwise, if the deceased person be an alien and intestate, because he can have no heir.

The *St.* 8 *Hen.* **6,** *c.* **16,** prohibiting the granting to farm of lands seized into the king's hands upon inquest before escheators, until the return of the inquest and a month afterwards, and the *St.* 18 *Hen.* **6,** *c.* **6,** providing that letters patent or grants of land before office found or returned into the exchequer, if the king's title in the same be not found of record, shall be void, are in force in this Commonwealth.

TRESPASS *quare clausum.* The trial was before *Putnam* J. on the general issue and on an issue upon the soil and freehold.

The plaintiff proved a possessory title in himself, which was admitted to be sufficient as against a stranger.

The defendant claimed to have acquired the title which escheated to the Commonwealth upon the decease of William Trotter, who died seised of the estate in question, in 1820, without heirs and intestate.

It appeared that the widow of Trotter afterwards married

William Barron ; that they petitioned the legislature to release to her the title of the Commonwealth to the estate ; that this was done, or intended to be done, by a resolve of the legislature, passed February 14, 1828 ; that in June 1828, Barron and his wife gave a power of attorney to the defendant to take possession for them, and that the defendant entered in pursuance thereof ; that on February 3, 1829, they conveyed the estate to the defendant ; and that after the entry by the defendant, the plaintiff entered and took possession of the estate.

It was contended by the defendant, that the Commonwealth became seised by the operation of law, upon the escheating of the estate, and so, that the title passed from the Commonwealth to the defendant.

The plaintiff contended, that an inquest of office was necessary, in order to give seisin to the Commonwealth ; that the Commonwealth could not convey the title before such inquest was had ; and that the defendant was, under these circumstances, to be regarded as a stranger.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the whole Court. If they should be of opinion that an inquest of office was necessary in order to cause the Commonwealth to be seised, or that the defendant had not acquired a title to the estate by virtue of the resolve of the legislature, judgment was to be rendered on the verdict otherwise the plaintiff was to become nonsuit.

*Oct. 23d, 1833.*   W. Baylies and A. Bassett, for the defendant, cited 2 Kent's Comm. 47 ; 4 Kent's Comm. 420 ; 6 Dane's Abr. 81.

Spooner and Warren, for the plaintiff, to the point, that an inquest of office was requisite to give seisin to the Common wealth, cited 3 Bl. Comm. 258, 259 ; Com. Dig. Escheat, B 1 ; Fairfax v. Hunter, 7 Cranch, 603 ; Craig v. Radford, 3 Wheat. 594 ; Jackson v. Adams, 7 Wendell, 367 ; St. 1791, c. 13 ; Sewall v. Lee, 9 Mass. R. 368 ; St. 1798, c. 43 ; Stowell v. Flagg, 11 Mass. R. 364 ; and to the point, that the passage of the resolve furnished no presumption that the grant by the legislature was rightfully made, Little v. Frost, 3 Mass. R. 118.

*Oct. 24th, 1834.*   SHAW C. J. delivered the opinion of the Court. It being conceded that the plaintiff has a good *primâ facie* title, unless

the defendant has established a title under the grant of the Commonwealth to Barron and wife, the only question for the consideration of the Court is, whether the Commonwealth were so seised of the estate by escheat, without inquest of office, upon the death of Trotter without heirs, as to be enabled to grant, and whether any thing passed by the force of that grant to Barron and wife. No question is here made respecting alienage or its effects. If Trotter was, in fact, an alien, that fact does not appear ; and upon the statement of facts, we are to understand that William Trotter, being seised of the estate in question, and being a subject and citizen of the Commonwealth, died intestate, and without heirs. The claim of the Commonwealth is therefore founded upon that clause in the act regulating descents, (*St.* 1805, *c.* 90, § 1,) which, after directing the descent of intestate estate to lineal and collateral kindred indefinitely, however remote, provides, that " where there shall be no kindred, the same shall escheat to the Commonwealth, for want of heirs." Supposing the right of the Commonwealth to be established by these facts, the question is, whether the Commonwealth can be deemed to be seised in fact, so as to make a valid conveyance, before an inquest of office, declaring and establishing the title of the Commonwealth by matter of record. By the *St.* 1791, *c.* 13, § 1, it is provided, that when any judgment shall be rendered on any inquest of office, that the Commonwealth be seised or reseised of lands &c., they shall be deemed to be in fact seised to all intents and purposes.

The question as it bears upon the present case, may resolve itself into two, either of which may be decisive : 1. Whether to any purpose the Commonwealth, in the case supposed, can be deemed seised, before judgment on an inquest of office ; and if so, 2. Whether they can make a valid conveyance to vest a title in their grantee.

1. It is necessary here to distinguish between the case of an alien dying intestate, and that of a subject. It has been often held, and indeed, I believe, is nowhere disputed, that an alien can take real estate, by deed or devise, or other act of purchase, but cannot *hold* against the Commonwealth ; he therefore takes a defeasible estate, good against all except the

Wilbur
*v.*
Tobey.

Commonwealth, and good against them, until they institute proceedings, and obtain a judgment by inquest of office. But an alien cannot take by act of law, as descent, because the law will be deemed to do nothing in vain, and therefore it will not cast the descent upon one who cannot by law hold the estate. Upon the decease of an alien therefore, as he has no inheritable blood, he can have no legal heirs, and no one can hold or take the estate by descent ; the law will not deem it to be in abeyance, unless in case of absolute necessity, and therefore the fee is deemed to vest in the Commonwealth presently. The Commonwealth therefore, upon the fact of the seisin, alienage, and death of the intestate being shown, have a complete title, without inquest of office.

But where a subject dies intestate, as the estate descends to collateral kindred indefinitely, the presumption of law is that he had heirs, and this presumption will be good agains the Commonwealth until they institute the regular proceedings by inquest of office, by which the fact whether the intestate did or did not die without heirs, can be ascertained, and if this fact is established in favor of the Commonwealth, it rebuts the contrary presumption, and the Commonwealth, by force of the judgment, and of the statute before cited, become seised in law and in fact. In such case therefore, the Court are of opinion, that an inquest of office is necessary, and that the Commonwealth cannot be deemed to be seised, without such inquest. *Jackson* v. *Adams*, 7 Wendell, 367 ; *Doe* v. *Redfern*, 12 East, 96. So far as this depends upon general principles, it seems to be a rule highly reasonable in itself, and tends greatly to the security and regularity of titles. By the mode of taking inquests, prescribed by the law of this Commonwealth, *St.* 1791, *c.* 13, § 2, general notice is to be given of the claim of the Commonwealth, any person is admitted to traverse it, a trial by jury is to be had, and costs are given to the prevailing party. These are highly reasonable and equitable provisions, and it is manifestly for the quiet of the Commonwealth and the security of the citizen, that they should be pursued, before the Commonwealth shall be permitted to take into its own custody and dispose of estates, upon a claim which, if not doubtful, is at least not apparent.

The rule is also in perfect accordance with the provisions of another act, *St.* 1798, *c.* 43, § 1, which directs, that when it shall be found by the attorney-general, that there are lands &c. which for want of legal heirs have accrued to the Commonwealth, it shall be his duty to prosecute a suit by inquest of office in the Supreme Judicial Court, in order to cause the Commonwealth to become seised thereof.

This is perhaps not a very direct authority upon the point, whether at law the Commonwealth is technically seised, without office, because such directions are often given for greater caution ; but it is in perfect harmony and consistency with the rule above given. The earliest provision on the subject was the colony law of 1646, ordering that where no heir or owner of houses &c. can be found, they shall be seized to the public treasury, till such heirs or owners make due claim &c. The term *seized* seems to imply some act to be done to vest the estate.

2. But upon the other question, supposing the Commonwealth could, to some purposes, be deemed seised, so far, for instance, as to defend their possession or take the profits, still it is a question whether they can grant so as to vest a title in the grantee. In the case last cited, *Doe* v. *Redfern*, where the whole subject is much discussed, it was held, that the statutes 8 *Hen.* 6, *c.* 16, and 18 *Hen.* 6, *c.* 6, prohibiting the granting to farm of lands seized into the king's hands, upon inquest before escheators, until the return of the inquest and a month after, unless the king's title be found of record, and for avoiding all grants made contrary thereto, do extend to the case of an escheat, upon the death of the tenant without heirs. This rule of course applied to the case of a subject, who was the immediate tenant of the crown, *in capite* or otherwise, or where the title of the king does not appear of record, as where the title of the king is upon a forfeiture for non-payment of rent at the exchequer, and the non-payment of rent and breach of condition do appear of record. These cases may admit of a different rule. The court were strongly inclined to the opinion, that in the case of a subject not the tenant of the crown, dying without heirs, the king could not, at common law, immediately claim and take, the title and possession,

<div style="margin-left:...">Wilbur<br>
*v.*<br>
Tobey.</div>

without office ; but whether so or not, that, by force of the statutes cited, the crown could not grant to a stranger in such case, without office, nor could a plaintiff in ejectment recover, upon the demise of the crown.    This principle, if in force, is decisive of the present case, because it is necessary for the defendant, not only to show a right in the Commonwealth, but a valid conveyance to Barron and wife under whom he claims.

The general rule in regard to English statutes is, that all statutes in amendment of the common law, and all those affecting titles and transfers of real property, which were made before the emigration of our ancestors, and which were appli cable to tenures here adopted, and in other respects applicable to the laws and institutions founded here, are deemed to be a part of the common law, as adopted by our ancestors and transmitted to us.    If this be true in regard to statutes generally, it seems emphatically true of statutes designed to regulate and restrain the royal prerogative, and prevent hasty grants by the Commonwealth, which might tend to throw embarrassments and restraints upon the titles of the subject.    These statutes are of a nature not to be frequently called into action ; still, we think, under the operation of the rule stated, they must be deemed to be in force.    If therefore, it might be deemed, that to some purposes the Commonwealth were seised, without office, they had no power to convey, and no estate passed by their grant to Barron and wife.

*Judgment on the verdict.*