## JAMES A. THOMPSON *vs.* JOSIAH BRIGHT.

The commonwealth, by a deed dated November 23d, 1801, granted a township of land in Maine to J. P., upon the condition, that the grantee, " before the first of January, 1802, shall have settled thirty families within said township ": This condition was not then or ever afterwards performed according to its terms; but the legislature, by resolves of 1816, *c.* 116, and 1831, *c.* 40, extended the time for its performance to the 1st of June, 1836, and, by a resolve of 1836, *c.* 43, author ized a commutation therefor, at the rate of thirty dollars for each family, which might then be deficient; declaring, at the same time, that all lands, on which the commutation money should not be paid, at that time, should be forfeited, and providing, also, that grantees might then have the further time of one year for such payment, by giving bonds therefor satisfactory to the land agent: On the 1st of June, 1836, R. S. R. and J. B. being the owners severally of certain undivided portions of the township, by mesne conveyances from J. P., gave their bond to the land agent for $900, being the amount of the commutation money due thereon, payable in one year: In January, 1840, R. S. R. died, intestate, leaving sufficient estate for the payment of all his debts, including the bond to the commonwealth, and J. L. R., his son, was appointed administrator of his estate : On the 5th of June, 1843, the defendant, claiming title by mesne conveyances from J. P., conveyed one undivided fourth part of the township to C. B., by a deed containing the usual covenants, and also a covenant against all claims and demands of the commonwealth, on account of the condition in the original deed to J. P., and " to extinguish and cause to be discharged all claims on the granted premises, on account of the settling duties commonly so called": In January, 1845, J. B. died, leaving sufficient estate for the payment of all his debts, including the said bond to the commonwealth: On the 14th of March, 1845, the legislature, by a resolve of that date, directed the land agent, (first giving the notices therein specified) to take measures for the recovery of possession of all lands granted on the condition above mentioned, where the same had not been complied with; declaring, that a compliance with the provisions of the resolve of 1836, *c.* 43, should be deemed to be a full performance of the said condition, and that the title to lands, in reference to which the same had been so performed, should be complete in the grantees and their assigns: On the 6th of January, 1846, C. B., the defendant's grantee, conveyed the premises, by a deed of quit-claim, to the plaintiff, who entered and took possession under the same: On the 27th of January, 1846, J. L. R., the administrator of R. S. R., paid B. & R.'s bond to the commonwealth for the commutation money, with interest, amounting to $1445; and, on the 3d of March following, the land agent, in pursuance of a resolve of the legislature, released to him all the right and title of the commonwealth in the township : In October, 1844, B. and the defendant conveyed all their remaining interest in the township to certain grantees, who thereupon entered upon the premises, and were in the actual occupation thereof, at the time of the commonwealth's deed to J. L. R.: Immediately on receiving his deed from the commonwealth, J. L. R. went upon the land and notified the parties in possession, namely, the plaintiff and the grantees above mentioned of B. and the defendant, of his claim thereto, and of his purpose to maintain the same at law, if necessary · A negotiation thereupon ensued, between J. L. R. and the parties in possession (with the exception of the plaintiff), which resulted in a conveyance from the former, June 11th, 1846, to the grantees of B. and the defendant and to one other person, of all his interest in the township; from which time, the usual acts of

ownership were exercised by the said grantees, and not by the plaintiff: In an action of covenant by the plaintiff against the defendant, on the covenants contained in the deed of the latter to C. B., it was held:

1. That the effect of the resolve of 1816, *c.* 116, (the provisions of which were further extended by the resolve of 1831, *c.* 40,) was to confirm the original deed to P., — to waive the performance of the condition precedent contained therein, and to substitute therefor a condition subsequent, — and to vest the estate in P. and his assignees subject to such new condition.

2. That, by the resolve of 1836, *c.* 43, lands held upon the said condition were discharged from a liability to forfeiture for non-performance of the same, by the payment of the commutation money on or before June 1st, 1836, or by giving a satisfactory bond for such payment, within a year from that time.

3. That the giving of such bond by B. & R., although the same was not paid, according to its terms, vested an absolute title to the township in P. or his assignees.

4. That, by the conveyance of the township from the commonwealth to J. L. R., on his payment of the amount due on the bond, no estate passed to him.

5. That if the non-payment of the bond were a breach of the condition in the original deed to P., so as to entitle the commonwealth to recover possession for condition broken, the commonwealth could make no valid conveyance of the estate, without first recovering possession.

THIS was an action of covenant, submitted to the court upon an agreed statement, from which the following facts appeared.

The commonwealth, by a deed bearing date November 23d, 1801, conveyed a township of land, containing about twenty-two thousand acres, in the then district of Maine, to John Peck, upon the condition, that the grantee, "before the 1st of January, 1802, shall have settled thirty families within said township." At the time this deed was executed, no families had been or were settled on the township thereby conveyed.

The legislature, by a resolve of 1816, *c.* 116, extended the time for the performance of the condition to June, 1822, and by a second resolve of 1831, *c.* 40, further extended the time therefor to the 1st of June, 1836. By a third resolve, passed April 1st, 1836, (1836, *c.* 43), the legislature authorized a commutation, at the rate of thirty dollars for each family, which might be deficient on the 1st of June, 1836. The resolve also declared, that all lands held on the condition of settlement, on which the commutation money should not be paid at that time, should be forfeited; provided that such

proprietors might have the further time of one year, from and after June 1st, 1836, for such payment, by giving bonds therefor satisfactory to the land agent.

On the 1st of June, 1836, no families had been settled on the township conveyed to Peck, nor had the commutation money been paid; but, on that day, Richard S. Roberts, being the owner of seventeen lots, or about eighteen hundred acres, and James Barnard, being the owner of one undivided half part of the residue of the township, and both deriving title by sundry mesne conveyances from Peck, gave their sealed note or bond to the land agent, for the payment to the commonwealth, in one year, of the sum of nine hundred dollars, being the amount of the commutation money then due on account of the township of which they were part owners.

On the 27th of February, 1837, Barnard and Roberts, not having paid their bond, petitioned the legislature for further time to pay the same; but no action was had on their petition.

On the 10th of January, 1838, John W. Dana presented a petition to the legislature, setting forth that he had conveyed his title in the township in question, with warranty, and that he was contingently liable thereon, by reason of the commutation money still remaining unpaid, and praying for an allowance of further time for the payment thereof. A resolve was thereupon passed, 1838, *c.* 48, giving Dana further time until the 22d of February, 1839, for the payment of the commutation money, and providing that no forfeiture should accrue by reason of the non-payment thereof before that day, and that on payment by Dana, the obligation of Barnard and Roberts should be assigned to him for his own use. No payment was ever made by Dana.

In January, 1840, Richard S. Roberts died, intestate, leaving several children and heirs, one of whom, his son, John L. Roberts, was appointed administrator of his estate. In the inventory of the estate, no mention was made of any interest in this township. Richard S. Roberts left sufficient

estate, after payment of his debts, to pay the bond of himself and Barnard to the commonwealth.

On the 5th of June, 1843, Josiah Bright, the defendant, claiming title by mesne conveyances from Peck, made a conveyance to Charles Bemis, in fee, of one undivided fourth part of the township. In this deed, the defendant entered into the usual covenants of seizin, title, and warranty, (with certain exceptions), and also covenanted with Bemis and his assigns, against all claims and demands of the commonwealth of Massachusetts, on account of the condition in the original deed of the commonwealth to Peck, and "to extinguish and cause to be discharged all claims on the granted premises, on account of the settling duties, commonly so called."

James Barnard died in January, 1845, leaving sufficient estate, after payment of his debts, to pay the bond above mentioned to the commonwealth.

The legislature, by a resolve passed March 14th, 1845, (*c.* 81 of that year), directed the land agent to take measures to recover possession, for the commonwealth, of lands previously conveyed on condition that the grantees should place thereon within a certain time a specified number of settlers, in those cases where the condition had not been complied with. The resolve also provided, that a compliance with the provisions of the resolve of 1836, *c.* 43, should be deemed and taken to be a full and satisfactory performance of the condition referred to ; and declared the title to lands, in reference to which the condition had been so complied with, to be complete in the grantees or their assigns. The resolve further provided, that, before proceeding, the land agent should first give notice, as therein prescribed, to delinquent proprietors, of the passing of the resolve, and that delinquent proprietors should be allowed until the 1st of December, 1845, to give the land agent the evidence necessary to prove their title complete. The notice required by this resolve was given by the land agent.

On the 6th of January, 1846, Charles Bemis, the defendant's grantee, conveyed the same premises conveyed to him

by the defendant, to James A. Thompson, the plaintiff, by a deed of quitclaim; and the plaintiff entered and took possession under the same, and caused his deed to be recorded, January 20th, 1846.

On the 27th of January, 1846, John L. Roberts, the administrator of Richard S. Roberts, paid Barnard and Roberts's bond to the commonwealth, with interest, amounting to $1445; and by a resolve of February following, (1846, c. 32,) the legislature directed the land agent to release all the right and title of the commonwealth in the township in question to him; which was accordingly done by a deed dated March 3d, 1846.

In October, 1844, Nahum Perkins, Jabez Perkins and David Scribner purchased of Barnard and the defendant, by a deed duly executed and recorded, all their remaining estate in the township, being three undivided fourth parts thereof, (except the lots heretofore mentioned as belonging to Richard S. Roberts), namely, of Barnard two undivided fourth parts, and of the defendant one undivided fourth part. The grantees, immediately after making the purchase, entered upon the premises, and were in the actual occupation thereof at the time of the commonwealth's deed to John L. Roberts, as was the plaintiff, also, under his deed from Bemis of the remaining undivided fourth part.

Peck, the original purchaser of the township from the commonwealth, and his grantees, ever since the conveyance to him, had been and then were in the actual possession of the same; and no steps had ever been taken by the commonwealth to recover possession, nor had the land ever been declared to be forfeited, except as herein before stated.

John L. Roberts, immediately upon receiving his deed of March 3d, 1846, from the commonwealth, proceeded to the county of Franklin, in the state of Maine, in which the township was situate, caused his deed to be there recorded on the 19th of the same month, and, by the advice of counsel, went upon the land, where one of the Perkinses, with a gang of men, was just closing lumbering operations for

the season, notified him of his claim to the township, and demanded and obtained of him the marks of the timber cut on the same, for the purpose of identifying and seizing it on its way down the river. The timber was afterwards seized and held for and on account of Roberts, and was subsequently demanded and obtained on account of timber cut on the township during the same and the preceding season. Roberts also notified the Perkinses, Scribner, and the plaintiff, then being in possession of the township, of his claim thereto under his deed from the commonwealth, and of his purpose to maintain it at law, if necessary.

A negotiation thereupon took place between Roberts, the Perkinses, and Scribner, which resulted in a conveyance from Roberts to them and one Stanley, by a release and quitclaim, dated June 11th, 1846, to the Perkinses and Scribner, in the proportions which they had heretofore held, and to Stanley the proportion which the plaintiff had held. The consideration, being $ 2600, was received of the grantees by Roberts. This settlement and conveyance took place at Augusta, in Maine, where the plaintiff resided ; but, though notified, he took no part therein. The usual acts of ownership have since been exercised by the above named grantees, and not by the plaintiff.

If, in the opinion of the court, the plaintiff is entitled to recover on the covenants in the defendant's deed to Bemis the damages therefor are to be hereafter assessed or agreed.

*R. H. Dana, Jr.*, for the plaintiff.

*E. Buttrick*, for the defendant.

The opinion of the court was delivered at March term, 1849.

WILDE, J. This is an action of covenant broken, on the covenants contained in a deed from the defendant to one Charles Bemis, of an undivided fourth · part of a township of land, previously conveyed by the commonwealth to one John Peck, from whom the defendant derived his title.

By his deed to Bemis, the defendant covenanted with him, his heirs and assigns, that he would warrant and defend the

36 *

granted premises against all claims and demands of the com-monwealth, on account of the condition in the deed to Peck; and to extinguish and cause to be discharged all claims on the premises, on account of the settling duties commonly so called.

The premises were afterwards conveyed by Bemis to the plaintiff, and the question is, whether, upon the facts agreed, the plaintiff is entitled to recover for the breach of either of the covenants in the defendant's deed to Bemis.

The plaintiff contends that the deed to Peck was on a condition precedent, namely, that, before the grant to him, he should have settled thirty families within the township. It is admitted, that no families were settled within the town-ship, at or before the grant to Peck, and it is therefore argued, that no estate ever vested in him by that grant.

It is generally true, that, by a grant of land, on a condition precedent, no estate will vest in the grantee, before the per-formance of the condition. But Littleton lays down an exception to the general rule, as follows: "If land be granted to a man for the term of five years, upon condition, that if he pay to the grantor, within the first two years, forty marks, that then he shall have a fee, or otherwise but for the term of five years, and livery of seizin is made to him by force of the grant, now he hath a fee simple conditional." Sect. 350.

Whether the entry of Peck under the grant, and holding possession with the consent of the commonwealth, by him-self and those holding under him, is equivalent to livery of seizin, so as to bring the grant to him within the above or any other exception to the general rule, it is not necessary to consider; for, from the facts stated, it clearly appears, that the performance of the condition by Peck has been waived by the commonwealth, and a condition subsequent has been substituted therefor.

The resolve of 1816, *c.* 116, extended the time for the per-formance of the conditions, as to settlers, contained in the grants of the commonwealth, where the same had not been performed, for the term of five years, ending the 1st of June,

1822.   By this resolve, the commonwealth waived the condition in their deed to Peck, and, thereupon, if not before, the estate vested in Peck subject to the new condition.   The resolve operated as a confirmation of the original grant, substituting only a subsequent condition for a condition precedent.

This new condition, however, was not performed; and it has been argued by the defendant's counsel, that the right of the commonwealth, to recover possession of the premises for the breach of the condition, has been barred by the Rev. Sts. c. 119, § 12, as the commonwealth did not enter, or commence any action to recover possession, for more than twenty years after the breach of the condition.   This might be so, but for subsequent resolves, whereby the time for the performance of the condition was still further enlarged; such enlargement being undoubtedly a waiver of the right of the commonwealth to enter or to recover possession for the breach of the former condition.   By the resolve of 1831, c. 40, the time for the performance was enlarged for the term of six years ending June, 1836; and before that term expired, another resolve passed, which appears to the court decisive of this case.   By the last mentioned resolve, (1836, c. 43,) the land agent of the commonwealth was directed to give notice to all proprietors, who were not known to have fulfilled the conditions as to settlers, to transmit to him, on or before the first day of June then next, a list of the number of settlers they had respectively placed on their lands, if any, and pay the sum of thirty dollars to the agent, for each and every family which should then be deficient of the whole number, which they were severally required by their deeds from the commonwealth to place thereon, or their lands would be declared forfeited to the commonwealth: "Provided, however, that they may have the further time of one year for the payment of the commutation, by giving bonds satisfactory to the land agent."   We entertain no doubt of the meaning of this proviso.   It was to place those who should pay the commutation money, and those who should

give satisfactory security therefor, on the same footing; and, in either case, their lands were not to be forfeited And so it is declared in the resolve of 1844, *c.* 81, which refers to the resolve of 1836, *c.* 43, and provides, that compliance with that resolve should be deemed and taken to be a satisfactory performance of the conditions contained in such conveyances; and further declares the title of such as had so complied to be complete in themselves or in their assignees. And this is the obvious meaning of the resolve of 1836, *c.* 43, which makes no distinction between the payment, and the giving satisfactory security for the payment, of the commutation money. If it were not the intention of the resolve to discharge the lands from the liability to forfeiture, by compliance with the proviso, there would be no reason for requiring security.

This being the meaning of the resolve, we are of opinion that it is decisive of the present action; for it is agreed, that James Barnard and Richard S. Roberts, the assignees of Peck, did give their sealed note or bond, obligating themselves to pay to the commonwealth, in one year, the sum of $900, being the amount of the commutation money then due on account of the township, which bond was satisfactory to the land agent. This security was given in compliance with the proviso in the resolve, and vested an absolute title in the assignees of Peck, although the commutation money was not paid within the year, so that no legal estate passed by the deed from the commonwealth to John L. Roberts.

Another ground of defence, we also think, is well founded. It is objected, that if the non-payment of the commutation money within the year were a breach of the condition, so as to entitle the commonwealth to recover possession for condition broken, the commonwealth had no power to assign such right, without first recovering possession. The question is not whether the commonwealth can be disseized, so as to invalidate a sale of their lands, as in the cases of individual proprietors of lands, but whether the commonwealth can assign a chose in action.

In the case of *Wilbur* v. *Tobey,* 16 Pick. 175, it was

decided, that the commonwealth is not so seized of an escheat before an inquest of office, as to be enabled to grant the same to another, and that nothing passes by such a grant. In that case, the estate escheated to the commonwealth by the death of the tenant without heirs. It was held, that the statute of 18 Henry VI., *c.* 6, was in force in this commonwealth. That statute provides, that all letters patent or grants of lands and tenements, before office found or returned into the exchequer, shall be void. The construction of this statute was very fully considered in *Doe* v. *Redfern,* 12 East, 96. That was the case of a grant of lands by the king, which had escheated by the death of the tenant without heirs, and it was held, that the grant was void, although made after inquest found, there being a defect in the inquisition. It was admitted by the counsel for the grantee, that if that had been a case of forfeiture, or entry for condition broken, the grant before office found would be void. But it was contended, though not admitted by the court, that the case of an escheat was very different from that of a forfeiture; as in the case of escheat, the king is in possession immediately on the death of the tenant without heirs. It was answered, and so it was decided by the court, that, although the king might be considered as having a possession in law, before office, yet 1e cannot grant until office found and returned, by the 18th of Henry VI., *c.* 6. Blackstone, in his commentaries (3 El. Comm. 259), says, that " inquests of office were devised by law, as an authentic means to give the king his right by solemn matter of record, without which, in general, he can neither take, nor part from, any thing. For it is a part of . the liberties of England, and greatly for the safety of the subjects, that the king may not enter upon, or seize any man's possessions, upon bare surmises, without the intervention of a jury." And, "with regard to real property, if an office be found for the king, it puts him in immediate possession, without the trouble of a formal entry, provided a subject, in the like case, would have had a right to enter."

In *Jackson* v. *Smith,* 7 Wend. 367, it was decided, that if

an estate escheat by the death of the tenant without heirs, yet, until office found, the state has no right to enter and take possession; and a grant of the lands before office found conveys no title. And the case of *Fairfax's Devisee* v. *Hunter*, 7 Cranch, 603, was decided on the same principle. And the principle unquestionably applies to all cases of for feiture, except as to the forfeiture of the lands of persons attainted of high treason, which, some of the judges were of opinion, vested the actual possession in the king, without office, on the ground, that the 33d of Henry VIII., *c.* 20, had taken such cases out of the 18th of Henry VI., *c.* 6. Dyer, 145. Upon these principles and authorities, we are of opinion, as to both grounds of defence, that this action cannɔt be maintained.